**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CLARK M. ZANKER,**

                               **Plaintiff,**

    vs.                                              **7:15-cv-01537**
                                                          **(MAD)**

**COMMISSIONER OF SOCIAL SECURITY,**

                               **Defendant.**
_____

**APPEARANCES:**                                 **OF COUNSEL:**

**CONBOY, MCKAY, BACHMAN &**       **LAWRENCE D. HASSELER, ESQ.**
**KENDALL, LLP**
407 Sherman Street
Watertown, New York 13601
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**   **KAREN T. CALLAHAN, SPECIAL AUSA**
Office of Regional General Counsel
Region II
26 Federal Plaza, Room 3904
New York, New York 10278
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    Clark M. Zanker ("Plaintiff") commenced this action on December 29, 2015, pursuant to

42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a decision of the Commissioner of Social

Security (the "Commissioner") denying Plaintiff's application for Disability Insurance Benefits

("DIB"). *See* Dkt. No. 1.

### II. BACKGROUND

Plaintiff's date of birth is February 18, 1969, and he was thirty-nine years old on July 31, 2008, the date of alleged disability onset. *See* Dkt. No. 8, Administrative Transcript ("T."), at 132. Plaintiff did not graduate from high school, and he was unable to obtain his high school equivalency diploma despite two attempts. *See id.* at 34-35. Plaintiff testified that he has trouble with reading comprehension and writing. *See id.* at 35. Most recently, Plaintiff worked for Kelly Services, Inc. as a solderer. *See id.* at 36, 722. Prior to that, Plaintiff held several different positions, including a laborer at a cheese plant, a solderer for Maxsys USA, Inc, a truck unloader for Walmart Associates, Inc., and a delivery tech for Rent-Way, Inc., among other employment. *See id.* at 36-38, 722-23. From 2000 through 2001, Plaintiff was employed by Advanced Chemical and Maintenance, cleaning floors in a grocery store. *See id.* at 53, 723. From 1998 through 1999, Plaintiff worked as a loader and unloader of metals at Watertown Iron and Metal, Inc. *See id.* at 53, 724. In 1996, Plaintiff was employed by Filtran, Inc, and he performed testing on the manufactured electrical parts. *See id.* at 54-55, 727. In that job, Plaintiff would test parts that were approximately four inches by four inches in size and weighed approximately five pounds. *See id.* at 55. He worked eight-hour shifts, and he was able to sit or stand while performing that job. *See id.* at 54-55.

At the time of his disability hearings, Plaintiff was married and resided with his wife, his daughter, and his daughter's boyfriend. *See id.* at 34. His household income was limited to his wife's social security disability income and food stamps. *See id.* at 35, 50. Plaintiff had a driver's license but only drove once in a while. *See id.* at 35. During the period of disability, Plaintiff described that he got up in the morning and watched television for an hour before taking a nap at 9:30 a.m. *See id.* at 48. When he woke up, he spent time with his family. *See id.* He ate breakfast and lunch, and he watched television throughout the rest of his day. *See id.* at 141, 749.

Plaintiff was able to bathe and dress himself independently most of the time. *See id.* at 47. He did not go shopping, perform any household chores, or perform any yard work. *See id.*

Plaintiff was unable to work during the alleged period of disability because of severe lower back pain, shoulder pain, and knee pain. *See id.* at 39, 44. In addition, he claimed to have restless leg syndrome, constant headaches, and problems breathing. *See id.* 40-44. Plaintiff also claimed to suffer from depression and anxiety, but he was able to be around people. *See id.* at 44-45, 753. He regularly visited his mother. *See id.* at 753. Plaintiff claimed that he was unable to lift anything at all with his left arm, and he could lift very limited weight with his right arm. *See id.* He was only able to walk the distance to and from his mailbox because of the discomfort of his knees and back. *See id.* Plaintiff also claimed that he could only stand for a very short amount of time due to pain, and he was never comfortable sitting. *See id.* at 753-54. Plaintiff stated that he was able to climb only a few stairs, and he was not able to kneel or squat at all. *See id.* at 754. Plaintiff stated that he cannot reach overhead with his left arm at all, and his reach was limited with his right arm. *See id.* Plaintiff was able to finish what he starts, and he was able to follow spoken and written instructions. *See id.* at 755.

On August 17, 2009, Plaintiff protectively filed an application for a period of disability and DIB. *See id.* at 103-06; 132. The application was denied at the initial level by the state agency pursuant to 20 C.F.R. § 404.1503. *See* T. at 59-63. Plaintiff then requested a hearing by an administrative law judge. *See id.* at 66-67. A hearing was conducted in person on June 29, 2011 before Administrative Law Judge John P. Ramos (the "ALJ"). *See id.* at 29-58. The ALJ issued an unfavorable decision to Plaintiff dated August 12, 2011. *See id.* at 10-22. The ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from July 31, 2008 through the date of that decision. *See id.* Plaintiff timely filed a request for a

3

review of the ALJ's decision with the Appeals Council, *see id.* at 7, and, in a notice dated February 7, 2013, the request was denied rendering the ALJ's decision the Commissioner's final decision, *see id.* at 1-3. Plaintiff then commenced an action for judicial review of the denial of his claims by the filing of a complaint with the District Court on March 19, 2013. *See Zanker v. Comm'r of Soc. Sec.*, No. 7:13–cv–00312 (N.D.N.Y. Mar. 19, 2013), ECF No. 1. The Parties consented to an Order remanding Plaintiff's claim back to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g). *See* T. at 582. On remand from the District Court, the Appeals Council vacated the final decision of the Commissioner and remanded the case to the ALJ for resolution of Plaintiff's knee impairment, further evaluation of the treating and non-treating source opinions, and to further consider Plaintiff RFC, among other things. *See id.* at 587-89.

Prior to the remand, Plaintiff protectively filed a second application for DIB on March 4, 2013. *See id.* at 713-14, 731. That application was also denied at the initial level by the state agency pursuant to 20 C.F.R. § 404.1503. *See id.* at 581, 625. Plaintiff again requested a hearing by an administrative law judge. *See id.* at 633-34. When the Appeals Council remanded Plaintiff's first claim, it found that Plaintiff's subsequent claim was duplicative and, therefore, directed the ALJ to associate the claim files and issue a new decision on the associated claims. *See id.* at 589. A hearing was conducted in person on March 27, 2014 before the same ALJ. *See id.* at 531-49. The ALJ issued an unfavorable decision to Plaintiff dated June 26, 2014. *See id.* at 475-91. The ALJ made the following determinations: (1) Plaintiff met the insured status requirements of the Social Security Act on June 30, 2012, which is the date last insured; (2) Plaintiff had not engaged in substantial gainful activity since July 31, 2008, the onset of the alleged disability; (3) Plaintiff's severe impairments included mild disc bulging at the L5-S1 level,

mild degenerative disc disease of the lumbar spine with bilateral sacroiliitis, bilateral osteoarthritis of the knees, obesity, and status post left shoulder distal clavulectomy and acromioplasty; (4) Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a Listed Impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listed Impairment(s)"); (5) Plaintiff had the residual functional capacity ("RFC") to lift/carry ten pounds occasionally, sit for six hours in an eight-hour work day, stand/walk for two hours in an eight-hour workday, could occasionally engage in postural activities, and had no limitations on reaching, handling, fingering, and feeling with both upper extremities; and (6) through the date last insured, Plaintiff was capable of performing past relevant work as an electronic parts tester. *See id.* Therefore, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from July 31, 2008, the date of alleged disability onset, through June 30, 2012, the date last insured. *See id.* at 490.

Plaintiff timely filed a request for a review of the ALJ's decision with the Appeals Council, *see id.* at 474, and, in a notice dated November 13, 2015, the request was denied rendering the ALJ's decision the Commissioner's final decision, *see id.* at 464-68. Plaintiff then commenced this action for judicial review of the denial of his claims by the filing of a complaint on December 29, 2015. *See* Dkt. No. 1. Both parties have moved for judgment on the pleadings. *See* Dkt. Nos. 9, 12. The Court orders that the Commissioner's decision is affirmed.

### III. DISCUSSION

**A. Standard of Review**

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine de novo whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 447 (2d Cir. 2012); *Pratts v. Chater*, 94 F.3d 34, 37 (2d

Cir. 1996). The Court must examine the administrative transcript as a whole to determine whether the decision is supported by substantial evidence and whether the correct legal standards were applied. *See Brault*, 683 F.3d at 447; *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009); *Schaal v. Apfel*, 134 F.3d 496, 500-01 (2d Cir. 1998). "A court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if it appears to be supported by substantial evidence." *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing *Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir. 1987)). The Second Circuit has explained that upholding a determination based on the substantial evidence standard where the legal principals may have been misapplied "creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986. However, if the record is such that the application of the correct legal principles "could lead to only one conclusion, there is no need to require agency reconsideration." *Id.*

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations and quotation marks omitted). If supported by substantial evidence, the Commissioner's factual determinations are conclusive, and the court is not permitted to substitute its analysis of the evidence. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982) ("[The court] would be derelict in [its] duties if we simply paid lip service to this rule, while shaping [the court's] holding to conform to our own interpretation of the evidence"). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a

6

de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984). This very deferential standard of review means that "once an ALJ finds facts, [the Court] can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'" *Brault*, 683 F.3d at 448 (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994)).

**B.     Analysis**

   *1. Five-step analysis*

For purposes of both DIB and SSI, a person is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

> The Social Security Administration regulations outline the five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v).

   *2. Treating Physician Rule*

Plaintiff contends that the ALJ did not properly apply the treating physician rule, and, as a result, controlling weight was not assigned to the opinions of Dr. Kelly Scott, M.D., who countersigned a medical source statement prepared by Allison C. Smith-Latham, RPA-C, and Dr.

7

Juan Diego Harris, M.D., who countersigned a medical source statement prepared by Mylene Jumalon, FNP. *See* Dkt. No. 9 at 15-18. Specifically, Plaintiff argues that these opinions should have been accorded controlling weight because the opinions are well-supported and not inconsistent with the other substantial evidence in the case record. *See id.* at 16.

A treating physician's medical opinions about the severity of a plaintiff's impairments and symptoms can be entitled to "controlling weight" when the opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also* 20 C.F.R. § 404.1527(a)(2); *Martin v. Astrue*, 337 Fed. Appx. 87, 89 (2d Cir. 2009) ("Although the final responsibility for deciding issues relating to disability is reserved to the Commissioner, . . . an ALJ must give controlling weight to a treating physician's opinion on the nature and severity of the [plaintiff's] impairment when the opinion is well-supported by medical findings and not inconsistent with other substantial evidence."); *Williams v. Comm'r of Soc. Sec.*, 236 Fed. Appx. 641, 643-44 (2d Cir. 2007) (noting that inconsistent evidence can be in the form of opinions of other medical experts).

Dr. Harris completed a medical source statement dated January 28, 2011. *See id.* at 449-55. Dr. Harris opined that Plaintiff could carry ten pounds occasionally and less than ten pounds frequently, stand and/or walk for less than two hours in an eight-hour work day, sit less than six hours in an eight-hour work day, and was limited in pushing and pulling due to upper and lower extremity limitations. *See id.* According to this medical source statement, Plaintiff could occasionally climb and balance, but he could never kneel, crouch, crawl, or stoop. *See id.* at 451. Dr. Harris opined that Plaintiff could reach frequently in all directions with his right arm but was otherwise unlimited in reaching, handling, fingering, and feeling. *See id.* at 452. Dr. Harris

8

found that Plaintiff's medications severely limit Plaintiff's effectiveness in the work place due to distraction, inattention, and/or drowsiness. *See id.* at 454.

In the June 2013 medical source statement, Dr. Harris, through Nurse Practitioner Jumalon, stated that Plaintiff could occasionally lift ten pounds, frequently lift less than ten pounds, stand or walk less than two hours in an eight-hour workday, must periodically alternate sitting and standing to relieve pain or discomfort, and is limited in pushing and pulling with his upper and lower extremities. *See* T. at 930-31. He also opined that Plaintiff can *never* climb, balance, kneel, crouch, crawl, or stoop and can occasionally reach in all directions but unlimited in handling, fingering, and feeling. *See id.* at 932. Dr. Harris and Nurse Jumalon found that medication will severely limit or restrict Plaintiff from working. *See id.* at 934. Dr. Harris provided this medical source statement in June 2013 with his medical opinion that the limitations listed would have existed in 2008. *See id.* at 935. The ALJ assigned little weight to this opinion. *See id.* at 489.

As discussed by the ALJ, the 2011 medical source statement is based on three treatment notes that did not document an examination of Plaintiff's upper extremities but noted a slight limp on one occasion, full motor strength of the lower extremities, lumbar spine tenderness, no joint effusions, and negative straight leg raising. *See id.* at 489. Likewise, the ALJ found that June 26, 2013 medical source statement to be unsupported by medical evidence of record. *See id.* The ALJ notes that Dr. Harris checked boxes on a form, but he declined to provide any written support beyond "see notes," which do not support Dr. Harris' checked limitations. *See id.* The ALJ concluded that Dr. Harris' treatment records do not support the limitations in the medical source statements and that the other medical evidence of record is not consistent with Dr. Harris' medical source statement opinions. *See id.*

9

The Court agrees. The ALJ properly applied the treating physician rule in this case and substantial evidence supports the ALJ's determination to accord limited weight to this opinion. To begin with, Dr. Harris and Nurse Practitioner Jumalon's medical treatment of Plaintiff began on November 9, 2010. *See id.* at 400. The examination at that visit revealed that Plaintiff had tenderness in the lumbar facets, but the MRI of Plaintiff's lumbar spine revealed some mild disc bulging at the L5-S1 level without evidence of herniation. *See id.* at 401-02. Plaintiff's lower extremities were found to have a normal appearance, full motor strength, no muscle atrophy, normal reflexes and sensations, and negative straight leg raise while sitting and supine. *See id.* at 402. In December 2010, Dr. Harris noted that Plaintiff reported a pain level of seven out of ten but found that he was "under no significant distress." *Id.* at 406.

During a May 2011 visit, Plaintiff reported "some pain" but Dr. Harris noted that Plaintiff was under no significant distress. *See id.* at 982. Nurse Jumalon noted that Plaintiff has some tenderness in the left sacroiliac joint but found that Plaintiff had a grossly normal motor strength on his lower extremities. *See id.* at 981. On September 27, 2011, the records note that Plaintiff is tolerating all his medications well without any nausea, vomiting, constipation, or increased sedation. *See id.* at 980. At this visit, Nurse Jumalon notes again that Plaintiff has some tenderness in the left sacroiliac joint. *See id.* at 980. Plaintiff required a change in pain medication due to insurance coverage, but he was able to find a medication that alleviated his pain without side effects. *See id.* at 971, 973, 975-79. By December 29, 2011, Nurse Jumalon found no tenderness in Plaintiff's lower back region or the sacroiliac region. *See id.* at 977. She did find that Plaintiff had tenderness in the cervical facet and occipital region, but Plaintiff reported 100% relief from neck pain and headaches after an intraarticular injection on February 2, 2012. *See id.* at 975-77. On several physical examinations, Plaintiff was found to have grossly

10

normal motor strength bilaterally in his upper extremities. *See id.* at 975, 977. Also, on examination, Plaintiff was noted to have grossly normal motor strength in his lower extremities bilaterally. *See id.* at 973. Throughout the records, Dr. Harris and Nurse Jumalon record Plaintiff's subjective complaints of pain but find that he is in no acute distress on physical examination. *See id.* at 971, 973, 975, 982, 406.

Dr. Scott's and Ms. Smith's medical practice treated Plaintiff during the period of time that he seeks disability. *See id.* at 321-22, 394-99, 410-13, 417, 448, 784-806, 827-28. Ms. Smith listed Plaintiff's diagnoses as back pain and osteoarthritis in his knees bilaterally, among other conditions. *See id.* at 417. They found that Plaintiff could lift ten pounds occasionally, lift less than ten pounds frequently, stand and/or walk less than two hours in an eight-hour work day, and sit for less than six hours in an eight-hour work day. *See id.* at 419. They also opined that Plaintiff's ability to push or pull was impaired by his back pain, and Plaintiff could never climb but could balance, kneel, crouch, crawl, or stoop occasionally. *See id.* at 419. Dr. Scott and Nurse Smith opined that Plaintiff was limited to reaching in all directions occasionally but unlimited in handling, fingering, and feeling. *See id.* at 420. They stated that Plaintiff's medication severely limits his effectiveness in the work place due to drowsiness, among other reasons. *See id.* at 422. Although Dr. Scott and Nurse Smith indicated that they do not know when Plaintiff's limitations were first present, they opined that the limitations have lasted for twelve consecutive months. *See id.* at 423.

The ALJ assigned little weight to this medical source opinion because the treatment records do not support the limitations. *See id.* at 488. The ALJ found that the treatment records documented that the examinations of Plaintiff show that Plaintiff had no neurological deficits, had supple and nontender calves, and had extremities that were warm and without edema. *See id.*

11

The medical providers did not document that they tested Plaintiff's strength, ranges of motion, or muscle atrophy. *See id.* In addition, Plaintiff is noted to have denied any musculoskeletal problems in March 2010, and, in October 2009, a nurse practitioner in the same medical practice found that Plaintiff had a full range of motion with equal strength and reflexes without signs of weakness. *See id.* at 396, 789. Ms. Smith assessed Plaintiff's back pain as stable on December 16, 2010. *See id.* at 413. The medical records of Dr. Scott's practice reflect that Plaintiff primarily received medical treatment for his back, knees, and shoulder by other providers. *See id.* at 321-22, 394-99, 410-13, 417, 448, 784-806, 827-28.

Moreover, the medical evidence of record is not consistent with either of the medical source statements signed by Dr. Harris or Dr. Scott. As noted above, medical records from Dr. Harris documented that Plaintiff did not have enduring side effects from his medications, which is contrary to both providers' medical source statements that medication would severely impair Plaintiff's effectiveness due to side effects. *See id.* at 971, 973, 975-80. At Plaintiff's consultative examination, it is noted that Plaintiff was not in any acute distress, walked with a normal gait, did not need any assistive device to ambulate, did not require any assistance getting changed for the examination, did not need help getting on and off the exam table, and could rise from a chair without any difficulty. *See id.* at 296.

Contrary to both medical source statements of Dr. Harris and Dr. Scott, Plaintiff's left shoulder had a full range of motion on exam by North Country Orthopaedic Group, P.C., in November 2008 and January 2009, and near full range of motion in February 2009. *See id.* at 279, 282, 285. In November 2008, January 2009, September 2009, February 2010, and August 2010, Plaintiff is observed by the same orthopaedic group walking with a normal gait without a wide base, and he was able to walk on his heels and toes each time he was tested. *See id.* at 279,

12

282, 293, 313, 382. In June 2009, Plaintiff wrote a note to one of his physicians stating that his shoulder was "coming along great it, feels better each time." *Id.* at 255. Plaintiff is recorded in the physical therapy records as stating that his shoulder felt "really good" in June through July 2009. *See id.* at 256-58.

Plaintiff received medical treatment from Dr. Thomas Herzog, an orthopaedic physician, and his medical group from January 2011 through June 2012. *See id.* at 425-28, 1042-48. The focus of the treatment was for Plaintiff's knees, which were diagnosed with joint pain with arthritis. *See id.* at 425. Plaintiff had a full range of motion of his knees at the initial visit with a stable ligamentous exam, no effusion, and a negative McMurray's test. *See id.* at 426. On the radiology images, Dr. Herzog noted that the joint space in Plaintiff's knees was well-preserved. *See id.* at 426. Plaintiff is continually noted to have full extension and flexion in his knees without effusion throughout his treatment with Dr. Herzog's group, and he is found to be neurovascularly intact without any gross instability of the knees. *See id.* at 426, 428, 1042, 1043, 1045-46, 1048.

Plaintiff was also examined at the emergency department of Claxton-Hepburn Medical Center on June 9, 2012 after falling down. *See id.* at 862-64. Plaintiff denied any tenderness in his neck, back, or extremities. *See id.* at 863. On examination, the physician found that Plaintiff had no spinal tenderness, no costovertebral tenderness, and a full range of motion in his spine. *See id.* at 864. His extremities were found to be neurovascularly intact with a full, normal range of motion, and he walked with a normal gait. *See id.* at 864. Based on the administrative record, the Court agrees with the ALJ that the opinions in Dr. Harris' and Dr. Scott's medical source statements are not supported by their own medical records and are inconsistent with other medical evidence.

13

If an ALJ refuses to assign a plaintiff's treating physician's opinion controlling weight, he or she must state a good reason for that determination. *See Saxon v. Astrue*, 781 F. Supp. 2d 92, 102 (N.D.N.Y. 2011). The "[f]ailure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (quoting *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998)). The regulations list factors the ALJ should consider when evaluating the appropriate weight to assign to medical opinions, including a treating source's opinion that is not assigned controlling weight. *See* 20 C.F.R. §§ 404.1527(c); 416.927(c). The factors include (1) the frequency of the examination and the length, nature and extent of the treatment relationship; (2) the evidence in support of the treating physician's opinion; (3) the consistency of the opinion with the record as a whole; (4) whether the opinion is from a specialist; and (5) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *See* 20 C.F.R. §§ 404.1527(c); 416.927(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). A treating physician's opinion can be contradicted by other substantial evidence, such as opinions of other medical experts. *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). The less consistent an opinion is with the record as a whole, the less weight it is to be given. *Otts v. Comm'r of Soc. Sec.*, 249 Fed. Appx. 887, 889 (2d Cir. 2007). In this case, the Court finds that the ALJ reviewed the regulatory factors in his decision, outlining the reasons behind his determination to assign little weight to the opinions of both Dr. Harris and Dr. Scott. *See id.* at 486-90. Within the decision, the ALJ has identified the specialities of Dr. Harris and Dr. Scott as well as the periods of time that these physicians provided medical treatment to Plaintiff. *See id.* The ALJ also thoroughly reviewed the medical evidence as well as other evidence in the record. *See id.* Accordingly, the treating physician rule

was properly applied to Plaintiff's claim and the Court finds substantial evidence in the record to support the ALJ's determinations.

### *3. Credibility Analysis*

Plaintiff contends that the ALJ failed to properly evaluate the credibility factors listed in 20 C.F.R. §§ 404.1529(c)(3)(i)-(iv), 416.929(c)(3)(i)-(iv) and discussed in SSR 96-7P, 1996 WL 374186 (July 2, 1996) ("Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements"). *See* Dkt. No. 9 at 18-21. An ALJ assesses a plaintiff's subjective symptoms using a two-step process. *See* 20 C.F.R. §§ 404.1529(c)(1), 404.1545(a)(3), (e); SSR 96-7P, 1996 WL 374186, at *1. At the first step, the ALJ must determine whether a plaintiff has an underlying impairment that is established by acceptable clinical diagnostic techniques and could reasonably cause a plaintiff's symptoms. *See* SSR 96-7P, 1996 WL 374186, at *2. If an impairment is shown, the ALJ "must evaluate the intensity, persistence, and limiting effects of the [plaintiff's] symptoms to determine the extent to which the symptoms limit the [plaintiff's] ability to do basic work activities." *See id.* at *2. "When the objective medical evidence alone does not substantiate the claimant's alleged symptoms, the ALJ must assess the credibility of the claimant's statements considering the details of the case record as a whole." *Wells v. Colvin*, 87 F. Supp. 3d 421, 431 (N.D.N.Y. 2015); *see also Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999).

The entire case record includes a plaintiff's history, laboratory findings, a plaintiff's statements about symptoms, statements and information provided by treating and non-treating physicians, and statements from other people that describe how the symptoms affect a plaintiff. *See* 20 C.F.R. §§ 404.1529(c)(1), 404.1545(a)(3), (e); SSR 96-7P, 1996 WL 374186, at *1. Factors that are relevant to a plaintiff's symptoms include (1) the plaintiff's daily activities, (2)

location, duration, frequency, and intensity of symptoms, (3) precipitating and aggravating factors, (4) medications and their side effects, (5) treatment received, (6) measures used to alleviate symptoms, (7) and other factors concerning functional limitations and restrictions due to the alleged symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii). The ALJ found that Plaintiff had underlying, medically determinable impairments that could reasonably be expected to produce Plaintiff's alleged symptoms. *See* T. at 486. However, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. *See id.* Contrary to Plaintiff's contention, the Court finds that the ALJ properly evaluated Plaintiff's credibility.

Plaintiff argues that the ALJ improperly found that the clinical evidence in the record does not support Plaintiff's testimony of minimal activities of daily living or that his low back and knee discomfort is worsening because the medical evidence provided by his treating physicians support Plaintiff's allegations of pain. *See id.* at 19-20. Plaintiff contends that the medical evidence demonstrates Plaintiff's ongoing medical treatment for pain supports a finding of credibility. *See id*. at 20. Plaintiff directs the Court to Dr. Harris' notation that no doctor has ever suggested that Plaintiff's pain is imaginary or "all in his head" or that he was faking the pain. *See* Dkt. No. 9 at 20. Plaintiff relies on the medical source statements made by Dr. Harris and Dr. Scott to support his argument that the ALJ improperly assessed his credibility.

Upon review of the November 9, 2010 medical record from Dr. Harris, the Court finds that Plaintiff has mischaracterized these notes. *See* T. at 400. Dr. Harris documented Plaintiff's statements about how his pain is psychologically influenced, which is clear by the use of Dr. Harris' quotation marks around "all in his head" to indicate Plaintiff's words. *See id.* Dr. Harris did not determine for himself that other physicians made those findings. Moreover, the Court has

16

already determined that the ALJ properly assessed the opinions of Dr. Harris and Dr. Scott on Plaintiff's limitations. The ALJ reviewed and evaluated Plaintiff's subjective complaints and properly considered Plaintiff's activities of daily living, inconsistent testimony and symptoms. It is clear to the Court that the ALJ assessed the regulatory factors required in determining whether Plaintiff's allegations of pain intensity are credible.

According to Plaintiff, he is unable to lift anything at all with his left arm, and he can lift very limited weight with his right arm. *See* T. at 753. He is only able to walk the distance to and from his mailbox because of the discomfort to his knees and back. *See id.* Plaintiff also claims that he can only stand for a very short amount of time due to pain, and he is never comfortable sitting. *See id.* at 753-54. Plaintiff stated that he is able to climb only a few stairs, and he is not able to kneel or squat at all. *See id.* at 754. Plaintiff states that he cannot reach overhead with his left arm at all, and his reach is limited with his right arm. *See id.* He does not perform any household chores or perform any yard work. *See id.*

Plaintiff characterized his pain to Dr. Harris as "shooting, stabbing, sharp, cramping, gnawing, crushing, hot-burning, tingling, dull, aching, heavy, tender, splitting, tiring-exhausting, sickening, fearful, punishing-cruel, miserable, and agonizing." *Id.* at 400. However, Plaintiff reported to Dr. Harris that his has no change in pain with sitting, standing, and walking. *See id.* at 400. He also reported that he is able to get up and walk independently and is able to climb one flight of stairs as opposed to his claim that he can only climb a couple of stairs. *See id.* The medical provider at North Country Orthopaedic Group, P.C., recorded that Plaintiff's pain was controlled with just over-the-county medication. *See id.* at 289. Another medical provider from that group examined Plaintiff's back and found diffuse tenderness of the lumbar spine "with some exaggerated response to just light touch." *Id.* at 382.

17

Plaintiff reported to the Javier Coronado, M.D., a consultative physician, that he cooks, cleans, and performs laundry. *See id.* at 296. At that examination, Plaintiff declined to walk on his heels and toes secondary to pain, but, however, Plaintiff was able to perform that test without difficulty in November 2008, January 2009, September 2009, and February 2010 for his orthopaedic provider. *See id.* at 279, 282, 293, 313, 382. Also, in April 2009, Plaintiff reported that his was cutting firewood over the last few days before his appointment. *See id.* at 244. Not only did the ALJ review the credibility factors, but his finding that Plaintiff was not fully credible is substantially supported by the record, as demonstrated by the Court's review of the medical evidence.

### *4. Residual Functional Capacity*

Lastly, Plaintiff argues that the determined RFC cannot be supported if the ALJ had given controlling weight to the opinions of Plaintiff's treating physicians, Dr. Harris and Dr. Scott. *See* Dkt. No. 9 at 22. As discussed above, the Court finds that the ALJ properly applied the treating physician rule to the opinions of Dr. Harris and Dr. Scott, assigning both opinion little weight. Accordingly, Plaintiff's contention that the RFC is not supported by substantial evidence is not meritorious.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the Parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the Commissioner's decision denying disability benefits is **AFFIRMED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED**

Dated: January 19, 2017
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge